It's my pleasure to welcome Judge Susan Ilston from the United States District Court of the Northern District of California who is sitting with us here by designation of the Chief Justice. We appreciate her volunteering to help us out and I hope she enjoys it while she's here and I join the welcome. Our first case this morning is 077313 Harris v. Peek. Mr. Hodge. Thank you, Your Honor. Good day to the court. My name is Robert Hodge. I'm the attorney for the appellant Dorothy Harris. This is a pretty straightforward case, Your Honor, as I submit. The issue is in the case is whether or not the Veterans Court disposed of my client's claim or imposed a high enough standard on the DA in disposing of my client's claim by saying it was her duty to go back to a Michigan court and try to get the divorce decree obtained by her late husband overturned. It's our submission that neither the law nor the regulations require that step be taken even if it could have been done in this case because the facts indicate that my client didn't take any action with respect to filing a claim until almost four years after the death of the Veteran and even more years, 12 years after the time the divorce decree was obtained. The existing regulation 38 CFR 3-3.206 says, and the court has read this in the briefs, that to where the issue is whether the Veteran is single or married, disillusion of a subsisting marriage, there must be a bona fide domicile in addition to the standards of granting the jurisdiction respecting the validity of the divorce. In this case, and subsequent to filing the briefs and preparing for this argument, I discovered in Federal Registered a new proposed regulation bearing on this issue which even imposes a higher duty on me. As far as I can tell, this regulation has not been adopted, it's just been proposed, even though it's from 2006, but it's at Federal Registered Volume 71, 182, 38 CFR Part 5. Mr. Hodge, what are we to make of the fact that she affirmatively represented to the VA that he had divorced her in order to alter the benefits they received? I believe, Your Honor, that we should take it that she knew that she had a decreed divorce in her hand, and as far as she knew, it was valid, it existed. Even though she challenged its validity and had no knowledge of it until the proceedings were terminated, she knew that she had received a piece of paper which said she and her husband were divorced. And she took advantage of that? She took advantage of it, there's no question about it. She took no action until the veteran was four years dead. There's no disputing that. But the issue in this case, I submit, is whether the VA should just accept that situation and say, well, we looked at the divorce decree, it seems to be valid on its face. The claimant has acknowledged that she received this paper or in some form says that she is a divorcee. It's at the end of the inquiry. And the case cited by the VA in the Hopkins case, which they cited in favor of going back and overturning the decree, doesn't stand for that proposition. And these new regulations seem to indicate it's the job of the VA to take a hard look at the decree and make sure it conforms with all the requirements of Michigan law. And this case is unusual or different, and all cases are different, but the important factor about this case is that the parties were living in separate states at the time of the decree. The veteran was in Michigan and the defendant was in Chicago. And just looking at it, we've all looked at divorce decrees, I'm sure, during the course of our legal career. Just looking at the decree, it's apparent on its face that by some mechanism, and we don't know what the mechanism was, the court thought that the defendant, my client, was a resident of the state of Michigan. And the most telling fact supporting that conclusion is that there is a provision in the decree which says the minor children can't be removed or their domicile can't be changed from Michigan without a further order of court. And somehow, if anybody looking at this in the VA were to look at that and say, well, wait a minute, I thought the kids were in Illinois with the mother, and I thought that was what was going on here. And the decree provides that the mother or the defendant, my client, will have custody of the kids. What's going on here? And the VA didn't do that. In other words, it didn't look into whether or not all the prerequisites for jurisdiction for the issuance of a valid decree were met. And as I argue in the brief, for an out-of-state defendant under Michigan law, there are enhanced proof requirements. There's got to be a year of residency instead of a half a year. There has to be proof of service, and there has to be several other things which are not reflected in the decree, in the face of the decree. Mr. Hodge, you may disagree with the factual determinations, but it seems to me that the VA certainly looked at the record and looked at the divorce decree and determined that it complied with Michigan law. And isn't that exactly what the regulation requires them to do? Well, as I submit, Your Honor, because it's uncontested that the parties were living in different states at the time, it's apparent on the face of the decree that the requirements of Michigan law may or may not have been satisfied, especially with respect to the residency of the plaintiff and the custody of the kids. But we can't get into the factual determinations. Well, I understand that, Your Honor, but I think that the VA here didn't even bother to check into whether there was jurisdiction properly, there was proper service. They didn't bother to determine whether or not there was proper residency. The Snyder case cited by the VA, on page nine of their brief, in different contexts, the OPM retirement benefits case talks about the duty of the agency being a ministerial duty, not to do the case over again, as Your Honor suggests, or make a factual determination. Personal jurisdiction, residency, custody of the kids, disposition of the property. There were two properties in this case. There was an Illinois property, which is not even mentioned in the decree, should have set up red flags, resubmit, either under the existing 3.206 regulation or the newer one, which says in particular language, it says that sections 5.194B2, the person satisfied all their legal requirements for obtaining a divorce in the place in which the divorce decree was issued. And, of course, the VA at the time of the determination knew the parties were living separate and apart in different states. And yet, they just treated it as if a regional council looked at the decree, apparently, and said, well, this looks okay to me. I see nothing wrong with this, without inquiring, asking whether or not the requirements under Michigan law for parties that were living in different states, a non-resident defendant, were satisfied. But it's not the VA's obligation to re-litigate the validity of the divorce decree. That's a matter of Michigan law. Of course, and federal courts have no business dealing with, or getting into the business of family law, or as we've, many of the recent cases have suggested, or emphasized. But here, I think the Snyder case has it right. The VA has a ministerial duty to look at the decrees. Let's say it was a court reviewing an arbitration decision to see if the procedures, if the formalities were all met. And in this case- Exactly what the VA did here. They did, but they did not do it, and they did not follow their own regulations by determining whether, under Michigan law, all the jurisdictional requirements were satisfied. They just looked at the decree and said, well, it seems to be okay on its face. It didn't deal, they didn't address the issue of, which I think should have been a red flag. I can see it's a mixture of fact and law here, but it's such a red flag that I suggest that it's almost a matter of law that when a Michigan court says, you can't move your kids, the domicile of your kids, without a further order of court, that suggests that the Michigan court, or it doesn't suggest it, it shows that the Michigan court thought the parties were both resigning in Michigan. And there's no danger of federal intrusion into state matters here, because if the VA were to determine that it was an invalid marriage and reward benefits, that certainly would not constitute fact preclusion or issue preclusion in any kind of state proceeding that might happen afterwards. It would just be an agency determination, just like in the Snyder case, where the OPM decided that one divorce decree was more valid, and the other divorce decree was not valid, where you had competing divorce decrees by parties. That's something that the federal agencies do every day. It doesn't have any impact or any significant impact on the state, what's going on with the state. So we think, as we pointed out in the brief, the decree doesn't deal, and it's an uncontested fact that the parties own two pieces of property, one in Illinois and one in Michigan. The Illinois property is not even mentioned. Again, without risk of... I thought you reserved a couple minutes, but you're starting to repeat. Why don't you use the rest of your time and reply if necessary. Thank you, Your Honor. Ms. Moore. Good morning, Your Honors. May it please the Court, we respectfully request that the Court affirm the decision of the Court of Appeals for Veterans Claims. The Veterans Court properly affirmed the Board of Veterans Appeals determination that Ms. Harris was not the veteran's surviving spouse for purpose of establishing her entitlement to Department of Veterans Affairs benefits. As the Board and the Veterans Court determined and as the record reflects, in January 1975, on January 27th, the veteran and Ms. Harris were divorced in Michigan. Ms. Harris concedes that she received the divorce decree that same month. Indeed, in April and December of that same year, 1975, Ms. Harris informed the VA that she and the veteran were divorced and therefore requested and received an increased apportionment of his benefits for their children. She also requested but did not receive an increased dependency benefit. Instead, the veteran's benefit was decreased to reflect her dependency benefit that he had been receiving prior to that. So the veteran did represent to the VA twice and based upon that representation, she received increased benefits for her children based upon her statement to the VA that the parties were divorced. In November of 1987, the veteran died. His death certificate indicated that he was divorced and a Michigan resident at the time of his death. The veteran's daughter supplied that information. The court should affirm the Veterans Court decision because Ms. Harris has not demonstrated any reversible error. The Veterans Court correctly noted that whether a claimant is a surviving spouse of a veteran is a question of fact. Moreover, the question of whether the divorce decree complied with Michigan state law involves the application of law to the facts over which this court does not possess jurisdiction. The board did look at and the Veterans Court reviewed the board's decision. The board did look at and found that Ms. Harris had been properly served with notice of the divorce proceedings. Ms. Harris received the decree the month that it was issued. She had one year under Michigan law to contest the divorce decree. She did not do so. Instead, she relied on the decree and informed the VA twice that year that she was due increased benefits because of the divorce. She received those benefits. The board also looked at the residency requirement. That issue was not brought up before the Veterans Court. However, the board did look at the time period when the veteran began living in Michigan. It found that as of 1971, he was a permanent resident of Michigan. The residency requirements require that someone obtaining a divorce be a permanent resident of that state in which the divorce is obtained at least one year prior to obtaining the divorce. From 1971, the board found that the veteran was a resident of Michigan, permanent resident. The divorce decree was obtained four years later in 1975. So the board determined that that requirement was indeed met. Moreover, again, because the appellant did not bring up this issue before the Veterans Court, it is waived. The issues of residences, real property residences, custody, these issues were not brought up to the Veterans Court. They were not mentioned in the appellant's brief. The court has no jurisdiction to decide these issues. Does it trouble you at all that the recitation in the decree is clearly wrong? The recitation of? Well, certainly the suggestion that the children are already domiciled in Michigan and must remain there. That's clearly wrong. Your Honor, I'm not sure that it has been established where the children were at the time of the divorce. The board did not look into that, I don't believe, nor did the Veterans Court. I would be more concerned if the children had no place to live, but that did not appear to be the case. The children did live with her in Chicago for the most part. At some point, I think, at least the son went back and forth. So I wouldn't be concerned with that. The children were mostly with their mother in Chicago. I don't think that that's a problem. She didn't bring that up to the Michigan court at any time, so she didn't consider it to be a problem. And she didn't bring it up to the board or the Veterans Court. So as long as the children had a place to live, which it appeared they did, it should not have been a problem. And I don't believe it was. Well, it does suggest there was some inaccurate reporting going on, doesn't it? Perhaps in that regard, or perhaps the children were living partly with the veteran. It doesn't necessarily mean that there was inaccurate reporting, I don't believe so. Again, because that was not a factual issue before the board or the court, it wasn't reviewed and looked at. It wasn't analysed. So it may not have been misreporting. We don't know. That's speculation. And it's not before the court either. Because the Veterans Court did not commit any reversible error, we respectfully request that the court affirm the decision of the Veterans Court. Thank you. Thank you. Thank you, Judge Elston, for raising that point. It does suggest that there was some inaccurate reporting and that there was service. Service may perhaps of my client in Michigan rather than in Illinois. We have no evidence whatsoever about service on this record. And I think this matter was not raised before the BVA formally or before the Veterans Court formally. It's struggling enough, as the court has pointed out, to be something that this court should really not feel bound to feel that it's okay to intervene at this stage. One other factor that bears the same point is that the record is clear that the veteran at this time had been, the judge, 100% disabled. Service connected under the VA. It's a benefit statute. And both social security. And we're talking about somebody here who has a problem. We don't know the nature or the full extent of the disability. But the veteran was in the military for six years. In the Air Force, it's not unlikely that there was some mental component to his disability. And for that reason, it's, again, the red flags should have been raised. The whistle and siren should have gone off for the VA. Under the existing regulation, 3.206, or it's the amended one, which is what I cited to. But that wasn't done in this case. The VA just took a look at it and said, well, it's okay to us. It's fine. And we've come to this court, the last court in the chain of appeals, and for my client, asking that the court at least here send this case back to the VA for a full consideration of these important issues and to make sure that a fraud wasn't perpetrated by or some inaccurate information, either whether intentionally or unintentionally, was not given to the Michigan court by the deceased veteran. Thank you. Thank you. The case is submitted.